PER CURIAM.
The State appeals the trial court’s order suppressing the results of a blood-alcohol test given to the defendant, Hani S. Banoub, approximately four hours after the car accident which resulted in the charges in this case. Because the trial court abused its discretion by excluding the test results, we reverse.
Banoub was charged with driving under the influence with serious bodily injury and leaving the scene of an accident with injury, both third-degree felonies. A police officer stopped the vehicle driven by Banoub because there was reason to believe that it had been involved in a nearby accident. Based *45 on his observations, a field sobriety test, and statements made to him, the officer arrested Banoub. Banoub at first agreed to take a breath test but, when the test was eventually offered to him approximately two hours later at the Central Breath Testing facility, he refused. Banoub was then taken to a hospital to have his blood drawn for testing.
The blood was drawn three hours and fifty-five minutes after Banoub was initially stopped. The reasons for the delay include time spent at the scene of the arrest for identification by witnesses to .the accident, travel to Central Breath Testing and to the hospital, the required observation time before breath testing, and time spent, at the hospital waiting for medical personnel to draw the blood. The State’s toxicologist testified that the blood-alcohol content of the blood sample was .08, but she was unable to give an opinion as to what Banoub’s blood-alcohol level would have been at the time of the accident because she did not have sufficient information to extrapolate.
Section 316.1933(1), Florida Statutes (1995), provides that, if a law enforcement officer has probable cause to believe that a motor vehicle driven by a person under the influence of alcoholic beverages has caused the death or serious bodily injury of a human being, such person shall submit to a test of the person’s blood for the purpose of determining the alcoholic content thereof. The statute further provides that the test shall be performed in a reasonable manner.
The trial court granted Banoub’s motion to suppress the blood-alcohol test results “based on the failure of the state to comply with the reasonableness requirement of F.S. Sec. 319.1933(1).” The reasoning underlying the trial court’s ruling is set out in the order as follows:
Florida Statute Sec. 316.1933(1) is the Florida codification of Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). Rather than include a set time period during which the war-rantless seizure of blood is permissible, as has been done in other jurisdictions, the Florida statute includes an element of “reasonableness.” Case law interpreting the statute make[s] it clear that what is “reasonable” is a factual determination to be done on a case by ease basis. In the instant case, the Defendant’s blood was drawn approximately four (4) hours after the accident. The state’s expert witness is unable to testify relevantly as to the meaning of the test results. In other words, there is no expert witness available to extrapolate, based on the timing of the accident and the blood draw, the defendant’s blood alcohol level at the time of the accident to a reasonable degree of medical probability. The Defendant’s blood alcohol level could have been higher or lower at the time of the accident. Case law interpreting “reasonableness” also discusses relevancy and materiality as impacting on “reasonableness.” F.S. Sec. 90.401 defines relevant evidence.as “evidence tending to prove or disprove a material fact.” F.S. 90.403 states that “relevant evidence is inadmissible if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues, misleading the jury, or needless presentation of cumulative evidence.”. Based on the lack of expert testimony to assist the jury as trier of fact in this case, the court is hard pressed to determine how the jury could, as laypersons, use the test results to assist them in deciding a material fact in dispute.
In Miller v. State, 597 So.2d 767 (Fla.1991), the Florida Supreme Court examined approaches taken by other states regarding the admissibility of blood-alcohol evidence and adopted the view that “the inability of the state to ‘relate back’ bloodalco-hol evidence to the time the defendant was driving a vehicle is a question of credibility and weight-of-the-evidence, not admissibility, provided the test is conducted within a reasonable time after the' defendant is stopped.” Id. at 770. The court then addressed the “reasonable time” requirement:
What is “reasonable” in this context will depend upon the facts of each case. As a general rule, we believe a test is- conducted at an unreasonable time if the results of that test do not tend to prove or disprove a material fact, or if the probative value of *46 the evidence is outweighed by its potential to cause confusion.
Id. at 770. The question of what is a reasonable time has not been widely addressed by Florida courts. In Miller, the court found that a blood-alcohol test conducted one hour and twenty minutes after the defendant was stopped was conducted within a reasonable time. In fact, a lapse of up to two hours and twenty minutes has been found to be reasonable. See Gallagher v. State, 606 So.2d 1236 (Fla. 3d DCA 1992).
In Haas v. State, 597 So.2d 770 (Fla.1992), the supreme court addressed the question of whether a blood-alcohol level test result must be related back to the time of the offense in order to convict of driving under the influence in either an impairment or an unlawful blood-alcohol level case. In the course of answering this question in the negative, the court repeated its view that extrapolation of blood-alcohol level test results back to the time of the operation of the vehicle is not a prerequisite for admissibility. The court reviewed laws in other jurisdictions which provide that test results obtained within two to three hours are automatically admissible as prima facie evidence that an unlawful blood-alcohol level was present at the time of the offense. 597 So.2d at 773-74. Although not noted in Haas, we observe that a Delaware statute provides that no person shall drive a vehicle when “the person’s alcohol concentration is, within 4 hours after the time of driving, .10 or more.” 21 Del.C. § 4177(a)(5).
We conclude that the delay of approximately four hours between the driving and the testing in this ease is not unreasonable. Support for this conclusion can be found in the manner in which alcohol is metabolized by the body, as explained in Haas:
[A] person’s blood-alcohol content increases for a period of time after consumption and then begins to decrease as the alcohol is eliminated, principally through metabolism. See 2 Donald H. Nichols, Drinking/Driving Litigation § 23:03 (1985). Therefore, if a driver ingested alcohol shortly before he was arrested, it is at least possible that his blood-alcohol level might not yet have reached the prohibited level [when he was driving] even though it registered above that level when tested some time thereafter.
597 So.2d at 772.
The State’s expert testified that the blood-alcohol level reaches its peak between 45 minutes to three hours after ingestion, depending upon the amount of food consumed at the same time. See also Richard E. Erwin, J.D., et al., Defense of Drunk Driving Cases, Sec. 15.07, 3d ed. (1993). Thus, four hours after being stopped, a driver’s blood-alcohol level should already have peaked and be no higher than it was at the time of driving. Because of this fact, the test results obtained after four hours are probative of the blood-alcohol level at the time of driving, even if the results cannot be extrapolated back to the time of driving. The parties are, of course, at liberty to attack the evidence and to seek to demonstrate through cross-examination or the introduction of other evidence that the test results do not accurately reflect the blood-alcohol level at the time of the offense. The jury can then decide what weight to give to the test results.
Reversed and remanded for further proceedings in accordance with this opinion.
FRANK, A.C.J., and LAZZARA and FULMER, JJ., concur.