LEVINE, J.
 

 The state filed a petition seeking the involuntary commitment of appellant to the custody of the Department of Children and Families (“DCF”) as a sexually violent predator under the Jimmy Ryce Act. A jury found appellant to be a sexually violent predator, and the trial court committed him to the custody of DCF “until such time as the Respondent’s mental abnormality or personality disorder has so changed that it is safe for the Respondent to be at large.” Appellant appeals this commitment.
 

 Appellant presents three issues in this case: (1) whether the trial court erred in overruling appellant’s objections to the prosecutor’s remarks in opening and closing statements; (2) whether the trial court erred in denying a motion for relief from judgment where the jury inadvertently viewed two exhibits not admitted into evidence; and (3) whether the trial court erred in denying a motion for mistrial when a doctor testified that there was a “chance” that appellant had already “killed” a child. We find that any errors were harmless, and as such we affirm the civil commitment of appellant.
 

 In 2000, the state filed a petition seeking involuntary commitment of appellant. Previously, in 1992, appellant was charged with capital sexual battery on his four-year-old stepdaughter. Appellant subsequently pled guilty to the lesser included offense of lewd assault. At the plea conference, the state and appellant agreed that the probable cause affidavit constituted a sufficient factual basis for the plea. In the agreed-to probable cause affidavit, there was a statement from the victim stating that appellant had “put his private in [her] private.”
 

 Prior to the civil commitment trial, the court granted a motion in limine preventing the state from referencing either the charge of capital sexual battery or the penetration in regard to the case involving his four-year-old stepdaughter. The state was allowed, however, to introduce evidence relating to the lewd assault to which appellant had pled guilty.
 

 During the opening statement, the prosecutor stated that appellant was convicted of a sexually violent offense “because he was convicted of lewd assault on ... the 4 year old daughter of his girlfriend by coming into the girl’s room at night, placing his private on her private.” Appellant’s objection was overruled by the trial court.
 

 Later, in the closing argument, the prosecutor stated that appellant “was convicted of lewd assault on ... the 4 year old daughter of his girlfriend. Again he came into her room at night, placed his private into her private....” Appellant objected, but the objection was overruled by the trial court. The trial court also denied appellant’s motion for mistrial based on the prosecutor violating the order in li-mine, which prevented the state from mentioning “penetration” as it related to this victim.
 

 Additionally, after the trial, the court entered an agreed-upon order for jury inquiry. Appellant’s counsel had noted that two exhibits, marked only for identification and not entered into evidence, may have been reviewed by the jury. The two exhibits were medical evaluations of appellant, which referenced appellant’s sexual
 
 *702
 
 battery charge and conviction for the lesser-included offense of lewd assault. They also included the victim’s statement that Hayes “put his private into her private.” In response to a questionnaire sent to the jury by the trial court, two jurors responded that they had, in fact, read both exhibits during the deliberations. The trial court determined that the two medical evaluations “had no effect on the outcome of this case given the totality of the evidence presented by the State” and denied appellant’s motion for relief from judgment.
 

 Finally, Dr. Morin, a psychologist specializing in the evaluation and treatment of sex offenders, stated that a psychiatrist told him that he was concerned with appellant’s fantasies of “killing again.” Dr. Morin stated, based on what the other medical professionals told him, “[tjhat there’s a chance that Mr. Hayes has already killed a child.” Appellant objected, and the court sustained the objection. The trial court denied the motion for mistrial but gave the following curative instruction telling the jury not to consider that statement:
 

 Mr. Hayes has not ever been charged with murder. He’s never been suspected of a murder. He’s never been accused of murder.... Please ... forget murder. This isn’t about a murder, he’s not accused of a murder, he’s not suspected of a murder. So I don’t know how much more clearer [sic] I can be, but hopefully that’s clear enough.
 

 The Involuntary Civil Commitment of Sexually Violent Predators Act, sections 394.910-932, Florida Statutes, also known as the Jimmy Ryce Act, requires the state to prove by “clear and convincing evidence” that “the person is a sexually violent predator.” § 394.917(1), Fla. Stat. The law is geared towards providing “long-term care and treatment” to those persons who are likely to engage in “repeat acts of predatory sexual violence.” § 394.910, Fla. Stat. We find there is overwhelming evidence, beyond clear and convincing, that appellant is likely to commit repeat acts of predatory sexual violence.
 

 At trial, aside from the testimony regarding the lewd assault of the four-year-old stepdaughter, appellant’s sister testified that appellant protected her from her older brother in return for sexual favors. When she was thirteen or fourteen, she had sexual intercourse with him. The sister also testified that when she was about eleven, appellant had her hold down one her friends while he raped her.
 

 Dr. Morin testified to appellant having a long history of fantasies about children. He diagnosed appellant as a pedophile with an anti-social personality disorder. Dr. Morin testified that appellant fantasized about molesting and killing children and that he heard voices telling him to “go out and rape children.” Appellant had concerns that “he may follow through on his fantasies to molest and murder children.” Appellant admitted to “molesting his step daughter” and to “molestfing] more than one boy under 12.” Dr. Morin stated that appellant had “minimal guilt” about his “sexual crimes” and that appellant “was sleeping restlessly because of the obsessive thoughts of killing children and raping them.” At a sex offender group meeting, appellant expressed concern about the Jimmy Ryce Act and was recently “minimizing” his fantasies. The doctor testified that appellant stated, “I’m having fantasies of killing again, and you know that I have done it. No, I didn’t say that.”
 

 Dr. Morin stated that appellant’s pedophilia is a mental abnormality that makes him likely to commit acts of sexual violence. Dr. Morin administered to appellant a risk assessment examination to determine the likelihood that appellant would commit a new sex offense, and the doctor
 
 *703
 
 determined that appellant was in a high risk group to reoffend. Dr. Morin determined that appellant met the criteria for a sexually violent offender. He concluded that appellant was a “pedophile without conscience.”
 

 During the doctor’s testimony, the state introduced into evidence two “autobiographies” that appellant authored while in outpatient treatment. In these autobiographies, appellant admitted to having the eight-or nine-year-old brother of one of his friends perform oral sex on him at age twelve. Later when he was fourteen or fifteen, appellant, with other boys, picked up a high-school-aged-girl in a stolen car and raped her in the car. Later, after his release from jail, appellant admitted to getting “a little action with a few young kids. Their age was usually about 10 years old or maybe a little less. The child would be the daughter of a friend. I’ll be watching their kids.” Appellant also admitted to possessing, as well as creating, child pornography. In the autobiography, appellant admitted to engaging in sex with his stepdaughter: “Here is my reality. She was five year’s [sic] old[.] I enjoyed the sex with her vary [sic] much. I think she did also. She liked to make daddy happy.”
 

 Appellant concluded one of his autobiographies by stating that he has the “potent[i]al to ex[e]cute these fanta[sies].” Appellant said he saw himself “abducting a young girl. Driving her to the woods somewhere. Raping her. Full penetration, unlike with my stepdaughter w[h]ere I did’nt [sic] penetrate. Then a grave. That way she would be just another picture in my photo album. Another picture on the milk carton at the local groce[r]y store.”
 

 Dr. Parker, another clinical psychologist, also testified to administering an examination to determine appellant’s risk of reof-fending. Dr. Parker concluded that appellant was at high risk to reoffend and, in her opinion, met the criteria for commitment as a sexually violent offender.
 

 The defense presented the testimony of Dr. Shadle, a physician specializing in psychiatry, who concluded that appellant did not meet the criteria for commitment and that appellant was a “typical recidivist.” The defense also presented testimony from Dr. Campbell, a psychologist, who concluded that the risk of appellant reoffending was at the low end of the spectrum.
 

 The jury returned a unanimous verdict finding appellant a sexually violent predator. The trial court adjudicated appellant a sexually violent predator and committed him to the custody of the DCF.
 

 Appellant contends that the trial court abused its discretion, where the state in opening and closing arguments mentioned “penetration” despite the trial court’s granting of a motion in limine. “A trial court has discretion in controlling opening and closing statements, and its decisions will not be overturned absent an abuse of discretion.”
 
 Merck v. State,
 
 975 So.2d 1054, 1061 (Fla.2007). A trial court does not abuse its discretion in denying a motion for mistrial, based upon improper comments, where the improper comments are not so prejudicial or inflammatory as to mandate a mistrial or new trial.
 
 Merastar Ins. Co. v. Webb,
 
 932 So.2d 228, 229 (Fla. 4th DCA 2005);
 
 see also Leyva v. Samess,
 
 732 So.2d 1118, 1121 (Fla. 4th DCA 1999). “The violation of a pretrial order, in and of itself, does not necessarily warrant the granting of a new trial where that violation has caused no prejudice to the opposing case.”
 
 Leyva, 732
 
 So.2d at 1121.
 

 The state concedes that the prosecutor’s comment in closing argument was improper but characterizes it as “fleeting
 
 *704
 
 and isolated.” We find the statements of the prosecutor in both the opening and closing statements to be improper. However, based on our review of the entire record, we find the error to be harmless. The test for harmless error in a civil case “is whether, but for the error, a different result would have been reached.”
 
 Pascale v. Fed. Exp. Corp.,
 
 656 So.2d 1351, 1353 (Fla. 4th DCA 1995);
 
 see also Marshall v. State,
 
 915 So.2d 264 (Fla. 4th DCA 2005). “[T]he reviewing court must examine the entire case to determine whether ‘the error complained of has resulted in a miscarriage of justice,’ specifically applying standard of liberal construction.”
 
 Pascale,
 
 656 So.2d at 1354 (quoting § 59.041, Fla. Stat.). It is abundantly clear that a different result would not have been reached but for the cited errors.
 

 We also find error in Dr. Morin’s statement that there was a chance appellant had already killed a child. However, the error was cured by the trial court’s curative instruction. “If the trial court could have reasonably decided that a curative instruction could have clarified any possible misunderstanding, then denial of the mistrial motion is warranted.”
 
 Hulick v. Beers,
 
 7 So.3d 1153, 1157 (Fla. 4th DCA 2009). Further, “[a] motion for mistrial is properly denied where the matter on which the motion is based is rendered harmless by a curative instruction.”
 
 Perez v. State,
 
 919 So.2d 347, 364 (Fla.2005). In the present case, the trial court gave a lengthy and extensive instruction that the jury not consider the brief remark made by Dr. Morin. Further, the trial court explained to the parties that its denial of the motion for mistrial was based on the fact that the record was replete with references to the fact that appellant “fantasized about killing kids” or “raping them and killing them.” Once again, based on our review of the record we find the error to be harmless and cured by the curative instruction.
 

 Finally, appellant claims that the trial court abused its discretion by denying his motion for relief from judgment. Appellant’s motion was based on the fact that the clerk inadvertently submitted to the jury exhibits that were not admitted into evidence but rather marked only for identification purposes. The trial court here had “broad discretion in determining whether to grant relief from a judgment. Likewise, we review orders of the trial court on such motions for abuse of discretion.”
 
 Kroner v. Singer Asset Fin. Co., L.L.C.,
 
 814 So.2d 454, 456 (Fla. 4th DCA 2001) (citations omitted). Clearly, “[a] new trial could be warranted if the jurors considered unauthorized materials affecting their verdict.”
 
 Bush v. State,
 
 809 So.2d 107, 115-16 (Fla. 4th DCA 2002). In the present case, the materials which were reviewed by two jurors included references to the sexual battery charge, which involved penetration of the victim,
 
 to which
 
 appellant eventually pled to a lesser included offense.
 

 We conclude again that, but for this error, a different result would not have been reached. We need not recount in detail the volumes of evidence admitted, without objection, detailing appellant’s many admissions involving sexually predatory behavior, including engaging in sexual misconduct with his stepdaughter. We agree with the trial court that “[t]he state presented overwhelming evidence that the Respondent suffers from a mental abnormality or personality disorder and that he would be likely to engage in acts of sexual violence if not confined.”
 

 For all the foregoing reasons we affirm the judgment of civil commitment and the
 
 *705
 
 adjudication of appellant as a sexually violent predator.
 

 Affirmed.
 

 POLEN and CIKLIN, JJ., concur.